SEYFARTH SHAW LLP
Kerry Friedrichs (SBN 198143)
kfriedrichs@seyfarth.com
Ryan McCoy (SBN 276026)
rmccoy@seyfarth.com
Petersen Walrod (SBN 339521)
pwalrod@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105-2930
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

Attorneys for Defendant
REYES FLEET MANAGEMENT, L.L.C.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO L. GAMEZ, individually, and on behalf of others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>REYES FLEET MANAGEMENT, L.L.C.; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. 2:26-CV-03926 CV (RAOx)<br><br>**DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:        July 10, 2026<br>Time:        1:30 p.m.<br>Crtrm:       10b<br><br>[Los Angeles County Superior Court Case No. 26STCV07112]<br><br>Complaint Filed:        March 4, 2026<br>Trial Date:               None Set |

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT...................................................................................1

II.   ARGUMENT........................................................................................................2

    A.    Legal Standard.........................................................................................2

    B.    Plaintiff's Motion is a Facial Challenge that Fails.........................................3

    C.    The Motion Fails Even If the Court Construes It as a Factual Challenge ......5

        1.    Evidentiary Standards for a Factual Challenge and *Perez*...................5

        2.    Reyes's Analysis of the Minimum and Overtime Wage Claims was Reasonable .................................................................................8

        3.    Reyes's Analysis of the Meal and Rest Break Claims was Reasonable ..............................................................................12

        4.    Reyes's Analysis of the Waiting Time Penalties Claim was Reasonable .................................................................................15

        5.    Reyes's Analysis of the Wage Statement Claim was Reasonable......16

        6.    Reyes's Analysis of Attorney's Fees was Reasonable .......................17

III.  CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alarcon v. Target Corp.*,
No. 5:25-CV-01276-SPG-SP, 2025 WL 2155371 (C.D. Cal. July 28, 2025) ......................................................................................................15

*Alfaro v. Banter by Piercing Pagoda*,
No. SACV2200266CJCADSX, 2022 WL 1284823 (C.D. Cal. Apr. 29, 2022) ........................................................................................................4

*Andrade v. Beacon Sales Acquisition, Inc.*,
No. CV1906963CJCRAOX, 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019).........8

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) ...........................................................................18

*Avila v. Kiewit Corp.*,
789 F. App'x 32 (9th Cir. 2019).......................................................................14

*Barajas v. CPC Logistics Sols., LLC*,
No. 22-CV-03911-WHO, 2022 WL 4397723 (N.D. Cal. Sept. 23, 2022).........17

*Barrett v. Saint-Gobain Glass Corp.*,
No. 8:24-CV-01844-FWS-DFM, 2024 WL 4828715 (C.D. Cal. Nov. 18, 2024) ......................................................................................................14

*Bulnes v. Suez WTS Servs. USA, Inc.*,
No. 22-CV-01154-BAS-AHG, 2023 WL 2186431 (S.D. Cal. Feb. 23, 2023) ................................................................................................1, 2, 4

*Cavada v. Inter-Cont'l Hotels Grp., Inc.*,
No. 19CV1675-GPC(BLM), 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019).16, 17

*Contreras v. J.R. Simplot Co.*,
No. 2:17–CV–00585–KJM–EFB, 2017 WL 4457228 (E.D. Cal. Oct. 6, 2017) ......................................................................................................16

*Crummie v. Certified Safety, Inc.*,
2017 WL 4544747 (N.D. Cal. Oct. 11, 2017) ...................................................3

ii

*Cunningham v. Sharecare CL, LLC*,
No. 2:23-CV-02564-DJC-CSK, 2024 WL 3738688 (E.D. Cal. Aug. 9, 2024) ..................................................................................................................17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)................................................................................................1, 2

*Faerber v. Accor Hotels & Resorts (Maryland) LLC*,
No. 2:25-CV-08169-DSF-JC, 2025 WL 3002993 (C.D. Cal. Oct. 24, 2025) ....................................................................................................................4

*Flores v. LGS Staffing LLC*,
No. 5:25-CV-02755-FWS-PD, 2026 WL 266273 (C.D. Cal. Feb. 2, 2026)........5

*Garibay v. Archstone Communities LLC*,
539 F. App'x 763 (9th Cir. 2013) .........................................................................9

*Harris v. KM Indus., Inc.*,
980 F.3d 694 (9th Cir. 2020) .................................................................................2

*Hill v. Hogan Pers., LLC*,
No. EDCV 25-0564 JGB, 2025 WL 1898255 (C.D. Cal. July 9, 2025) ......11, 12

*Huston v. LEGO Brand Retail, Inc.*,
No. 8:25-CV-02693-FWS-ADS, 2026 WL 395906 (C.D. Cal. Feb. 12, 2026) ..................................................................................................................14

*Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193 (9th Cir. 2015) ...............................................................................2

*Kilkenny v. Gen. Motors, LLC*,
812 F. Supp. 3d 985 (N.D. Cal. 2025)...................................................................4

*Kraebel v. Siemens Indus., Inc.*,
No. CV 25-885-GW-MARX, 2025 WL 1421383 (C.D. Cal. Apr. 8, 2025) ....................................................................................................................7

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) .............................................................................3, 9

*Lopez v. Gen. Dynamics Info. Tech., Inc.*,
No. 24-CV-01743-BAS-DEB, 2025 WL 2308098 (S.D. Cal. Aug. 11, 2025) ..............................................................................................................13, 18

iii

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

*Lopez v. Util. Tree Serv., LLC*,
    No. 3:22-CV-01404-JES-DDL, 2024 WL 239103 (S.D. Cal. Jan. 22,
    2024) ...............................................................................................................19

*Mills v. Rescare Workforce Servs.*,
    No. 2:20-CV-10860-FLA, 2022 WL 843461 (C.D. Cal. Mar. 22, 2022) ........2, 3

*Ochoa v. Fred Loya Ins. Agency, Inc.*,
    No. 1:24-CV-0151 JLT BAM, 2024 WL 2014781 (E.D. Cal. May 7,
    2024) ...............................................................................................................16

*Palomino v. Gen. Motors*,
    LLC, No. CV 25-8888-MWF, 2025 WL 3552321 (C.D. Cal. Dec. 10,
    2025) .................................................................................................................3

*Patel v. Nike Retail Servs., Inc.*,
    58 F.Supp.3d 1032 (N.D. Cal. 2014).....................................................................9

*Peraino v. DNC Parks & Resorts at Tenaya, Inc.*,
    No. 25-CV-1130-JES-DEB, 2025 WL 3022750 (S.D. Cal. Oct. 29, 2025).......15

*Perez v. Rose Hills Co.*,
    131 F.4th 804 (9th Cir. 2025) ....................................................................*passim*

*Peters v. TA Operating LLC*,
    No. EDCV221831JGBSHKX, 2023 WL 1070350 (C.D. Cal. Jan. 26,
    2023) ...............................................................................................................13

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................................18

*Ramirez v. Merrill Gardens, LLC*,
    No. 1:22-CV-00542-SAB, 2024 WL 3011142 (E.D. Cal. June 11, 2024).........19

*Ramos v. Schenker, Inc.*,
    2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) ...................................................18

*Rea v. Michaels Stores Inc.*,
    742 F.3d 1234 (9th Cir. 2004) .............................................................................3

*Richard v. St. Jude Med., Cardiology Div., Inc.*,
    No. 2:25-CV-11795-WLH-SK, 2026 WL 523705 (C.D. Cal. Feb. 25,
    2026) .............................................................................................................8, 9

iv

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d 1025 (C.D. Cal. 2017) ...............................................................9

*Salter v. Quality Carriers, Inc.*,
    974 F.3d 959 (9th Cir. 2020) .................................................................2, 3, 16

*Santos v. Pictsweet Co.*,
    No. 2:25-CV-03181-AB-SSC, 2025 WL 2424357 (C.D. Cal. Aug. 20,
    2025) ......................................................................................................4, 14

*Sauls v. Computershare Inc.*,
    No. 2:24-CV-03164-DAD-AC, 2025 WL 2788047 (E.D. Cal. Oct. 1,
    2025) ......................................................................................................14

*Seijas v. Jackson Lab'y*,
    No. 2:24-CV-03423-DJC-AC, 2026 WL 203257 (E.D. Cal. Jan. 27,
    2026) ..................................................................................................*passim*

*Sillah v. Command Int'l Sec. Servs.*,
    154 F. Supp. 3d 891 (N.D. Cal. 2015) ...............................................................11

*Soto v. Graybar Elec. Co., Inc.*,
    No. 1:24-CV-00520-JLT-SKO, 2025 WL 3648360 (E.D. Cal. Dec. 16,
    2025) ......................................................................................................14

*Sutton v. Staffing Synergies, Inc.*,
    No. EDCV 26-1100 JGB, 2026 WL 1497437 (C.D. Cal. May 28, 2026) .......6, 8

*Waltz v. Wal-Mart Assocs., Inc.*,
    No. EDCV2101538TJHRAOX, 2022 WL 489697 (C.D. Cal. Feb. 17,
    2022) ......................................................................................................10

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ...............................................................7

**Federal Statutes**

Class Action Fairness Act of 2005 ...............................................................*passim*

**State Statutes**

Cal. Code Civ. Proc. § 102.5 ...............................................................18

Cal. Code Civ. Proc. § 1021.5 ...............................................................18

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Cal. Labor Code § 203 ........................................................................................16

Cal. Labor Code § 226 ........................................................................................18

Cal. Labor Code § 1194 ......................................................................................18

Cal. Labor Code § 1194.2 ..............................................................................11, 12

vi

## I.     SUMMARY OF ARGUMENT

Plaintiff's Motion to Remand should be denied because Defendant Reyes Fleet Management, L.L.C. ("Reyes") has clearly established in its Notice of Removal (ECF No. 1) that the amount in controversy based on Plaintiff's allegations in the Complaint exceeds $5 million. In the Notice of Removal, Reyes demonstrated an estimated amount in controversy of over $9.2 million. This estimate is based not only on reasonable assumptions drawn from the sweeping allegations in Plaintiff Ricardo L. Gamez's ("Plaintiff") Complaint, but also through uncontested extrinsic evidence that shows over 33,000 workweeks in the putative class period with an average of over eight hours worked every single day. When presented with similar assumptions, nearly every California federal district court has denied remand.

Plaintiff's Motion for Remand (the "Motion") is, in substance, a facial challenge, because it does not substantially contest any of the factual allegations of Reyes's Notice of Removal (i.e., the number of employees, workweeks, or average hourly pay). Plaintiff tries to use the ambiguities in his complaint as a shield against removal, when courts do precisely the opposite; they acknowledge that failure to include limiting language in complaints supports reasonable assumptions about the amount in controversy. "No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 574 U.S. 81, 89 (2014). Because Reyes's showing was undeniably plausible, the Motion fails. *Dart*, 574 U.S. at 89; *Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-CV-01154-BAS-AHG, 2023 WL 2186431, at *4 (S.D. Cal. Feb. 23, 2023) (finding that a remand motion made "only a facial attack on Defendant's proposed violation rate, because he fails to attack the rate's factual underpinnings. Defendant's proposed violation rate is plausible, making Plaintiff's attack unsuccessful.")

Even if the Court construes the Motion as a factual challenge, Plaintiff fails to rebut Reyes's showing. First, he ignores or misconstrues the extrinsic evidence that Reyes provided (and allegations set forth in Plaintiff's own Complaint). Second, he relies

1

on outdated case law that often relies on anti-removal presumptions that are not applicable—they were foreclosed by *Dart*. Third, he does not present any contrary evidence, and he does not undermine the reasonableness of the assumptions inferred from the Complaint.

Accordingly, the Court should deny the Motion.

## II. ARGUMENT

### A. Legal Standard.

"CAFA [is] to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015). The Supreme Court has emphasized that there is no presumption against removal under the CAFA. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 86 (2014) ("[N]o anti-removal presumption attends cases invoking CAFA ... .").

When a plaintiff challenges the amount in controversy on a motion to remand, the challenge may be "facial" or "factual." *See e.g.*, *Bulnes*, 2023 WL 2186431 at *4. "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (cleaned up). By contrast, "a factual attack contests the truth of the allegations themselves. When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id*. Where a party does not "offer[] a declaration or any other type of evidence to challenge the evidence contained in the Notice of Removal" the challenge is facial and not factual. *Mills v. Rescare Workforce Servs.*, No. 2:20-CV-10860-FLA (JPRX), 2022 WL 843461, at *4 (C.D. Cal. Mar. 22, 2022); *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("Here, Salter mounted only a facial attack, rather than a factual attack. In other words, he has not really challenged the truth of Quality's 'plausible allegations.' ")

By contrast, where the challenge is a "factual" one, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-

2

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

controversy requirement has been satisfied." *Id.* Indeed, if a defendant offers "substantial, plausible evidence that damages at issue exceed[] $5,000,000, and [there is] no evidence at all to the contrary[,]" then "removal is proper." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2004) (emphasis added). This rule applies even if the defendant offers "no direct evidence," "statistical [evidence]," or "empirical data" to support its "presumed' violation rates, but instead relies solely on "allegations of the complaint." *Crummie v. Certified Safety, Inc.*, 2017 WL 4544747, at *1, 3 (N.D. Cal. Oct. 11, 2017) (denying motion to remand and rejecting argument that a "plaintiff can successfully resist remand merely by showing through argument [as opposed to rebuttal evidence] that the removing defendant's evidence is insufficient").

"Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010) (cleaned up.)

### B. Plaintiff's Motion is a Facial Challenge that Fails

Here, the Motion presents a facial, and not a factual, challenge to the Notice of Removal, because the Motion has not "offered a declaration or any other type of evidence to challenge the evidence contained in the Notice of Removal." *Mills*, 2022 WL 843461 at *4; *Palomino v. Gen. Motors*, LLC, No. CV 25-8888-MWF (AGRX), 2025 WL 3552321, at *2 (C.D. Cal. Dec. 10, 2025) ("Plaintiff does not identify here whether his attack is facial or factual. However, because Plaintiff nowhere provides competing evidence or reasoned argument as to how Defendant's jurisdictional allegations are insufficient, the Court considers the attack a facial attack.")

The Motion does not contest the truth of the number of workweeks, the number of employees, the average hourly rate, or the average hours worked per day. Instead, the Motion merely disputes Reyes's use of violation rates, arguing that the rates are unreasonable. *See e.g.*, Motion, 15:5-6 ("Defendant's assumption of one hour of unpaid overtime is both unsupported and impermissibly speculative.") However, this does not

3

amount to a factual challenge. *Santos v. Pictsweet Co.*, No. 2:25-CV-03181-AB-SSC, 2025 WL 2424357, at *4 (C.D. Cal. Aug. 20, 2025) ("Both claims allege evidentiary shortcomings-not the truthfulness of the allegations in the declaration. Further, Plaintiff calls Defendants' assumptions 'dubious because plaintiff does not allege any violation rates in the Complaint,' but the assumed violation rates are not something the Declaration alleges. Thus, the Plaintiff merely makes a facial attack on Mr. Wilson's Declaration, and the declaration is admissible."); *Alfaro v. Banter by Piercing Pagoda*, No. SACV2200266CJCADSX, 2022 WL 1284823, at *2 (C.D. Cal. Apr. 29, 2022) ("Here, Plaintiff only launches a facial attack on Defendant's Notice of Removal. Though Plaintiff asserts that Defendant's amount in controversy calculations are unsupported and speculative . . .Plaintiff offers no evidentiary support for those contentions.")

When a party asserts a facial and not a factual challenge, the removing defendant "is not 'required to present evidence in support of its jurisdictional allegations …' ". *Faerber v. Accor Hotels & Resorts (Maryland) LLC*, No. 2:25-CV-08169-DSF-JC, 2025 WL 3002993, at *4 (C.D. Cal. Oct. 24, 2025) (citing *Salter*, 974 F.3d at 964-65.) Instead, the court accepts the allegations of the notice of removal "as true and drawing all reasonable inferences in the defendant's favor, determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Kilkenny v. Gen. Motors, LLC*, 812 F. Supp. 3d 985, 989 (N.D. Cal. 2025). These allegations need only be "plausible." *Santos*, 2025 WL 2424357 at *4 (citing *Salter*, 974 F.3d at 963.)

In this case, Reyes's Notice of Removal presented plausible jurisdictional allegations that show the estimated amount in controversy well exceeds $5 million. Plaintiff's Motion does nothing to suggest that the key data upon which Reyes relied in the Notice of Removal is implausible. And, it is undisputable that the violation rates Reyes used in the Notice of Removal, which have been accepted as reasonable by other courts even in the context of factual challenges, are at least *plausible* based on the Complaint. *See e.g.*, *Bulnes*, 2023 WL 2186431 at *4 (S.D. Cal. Feb. 23, 2023) ("This

4

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Court, like others, finds that Defendant's 40% violation rate is a plausible assumption given Plaintiff's 'pattern and practice' allegations.")

Therefore, the Motion fails because it is a facial challenge that does not show that Reyes's jurisdictional allegations were not plausible.

## C. The Motion Fails Even If the Court Construes It as a Factual Challenge

### 1. Evidentiary Standards for a Factual Challenge and *Perez*

To the extent that the Court construes the Motion as a factual challenge, it fails because Plaintiff fails to rebut Reyes's showing in its Notice of Removal.

A defendant "is only required to show that it is more likely than not that Plaintiff's maximum recovery reasonably could be over $5 million." *Seijas v. Jackson Lab'y*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257, at *2 (E.D. Cal. Jan. 27, 2026). "In most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation." *Flores v. LGS Staffing LLC*, No. 5:25-CV-02755-FWS-PD, 2026 WL 266273, at *4 (C.D. Cal. Feb. 2, 2026) (citing *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1100 (S.D. Cal. 2024)). "[A] removing defendant need not present evidence of what its ultimate liability will be—in many cases, the defendant presumably expects that figure to be zero. The district court's task is simply to determine if the defendant's reasoning and underlying assumptions are reasonable." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citation omitted).

The Motion primarily challenges the violation rates that Reyes assumed in the Notice of Removal, arguing that, vis-à-vis the Complaint's allegations, the assumed violation rates are "unfounded" and are "artificial construct[s] designed to inflate the amount in controversy." *See e.g.*, Motion, 14:25; 15:2-3; 19:8 ("the proposed violation rates are arbitrary…"). However, the law is settled that "[e]ven if Plaintiff thinks a lower violation rate could be supported by his Complaint, 'that does not automatically render

the rate assumed by [Defendants] unreasonable.' " *Sutton v. Staffing Synergies, Inc.*, No. EDCV 26-1100 JGB (DTBX), 2026 WL 1497437, at *3 (C.D. Cal. May 28, 2026).

Here, Plaintiff does not show that the violation rates used in the Notice of Removal are unreasonable; at best, Plaintiff shows that the Complaint could have supported lower rates. Under recent binding Ninth Circuit precedent, that is insufficient. "[A]n assumption is not unreasonable simply because another equally valid assumption may exist." *Perez*, 131 F.4th at 809. In *Perez*, the Ninth Circuit rejected the notion that because the allegations of the complaint "could support a lower violation rate as easily as it could support the violation rate that" the removing defendant assumed, that this "automatically render[ed] the rate assumed by" the removing defendant "unreasonable." *Id*. at 810. The Ninth Circuit found that relying on this type of reasoning resulted in "legal errors in the remand order" that "prevented the district court from adequately evaluating whether Rose Hills's violation-rate assumption was a reasonable interpretation of the complaint." *Id*. Ultimately, *Perez* reversed a remand order based on this flawed reasoning. *Id*.

Plaintiff makes the same argument in his Motion—that because his Complaint could support lower rates with alleged limiting language, and the absence of even broader allegations, that Reyes's assumed violation rate must simply be tossed out. *See e.g.*, Motion, 15:1-6 (describing the Notice of Removal's estimated violation rates as an "artificial construct"; 15:17-21 ("these allegations do not support Defendant's assumption… [a]ccordingly, Defendant's assumption that Plaintiff and the Class worked one hour of unpaid overtime per workweek is unsupported by the allegations of the Complaint.") Indeed, as the plaintiff in *Perez* pointed to the complaint's use of purported limiting language ("at times"), Plaintiff here also relies on the Complaint's use of limiting language ("sometimes, but not always") to argue that Reyes's assumed violation rates are automatically unreasonable.

As an initial matter, the Ninth Circuit in *Perez* did not take issue with the fact that the removing defendant "did not submit evidence justifying the particular violation rate it assumed". *Perez*, 131 F.4th at 809. The Motion's premise that Reyes was required to

6

submit evidence to prove the violation rate is wrong, and is contrary to the majority of cases finding violation rates inferred from a complaint's allegation reasonable, as is discussed in depth below.

Indeed, the fact that courts regularly infer violation rates from class action wage and hour complaints (see *infra*, Section II(C)(2)) defeats the Motion's suggestion that no violation rate could reasonably be inferred based on the Complaint. And while it is conceivable that the specific wording of the Complaint could support lower (or higher) violation rates, that itself does not defeat the rates that Reyes used. *Perez*, 131 F.4th at 809 ("A 55-mile-per-hour speed limit is not 'arbitrary' just because 50 miles per hour, or 60 miles per hour, would work equally well.") (citing *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 978–79 (9th Cir. 2023); *Kraebel v. Siemens Indus., Inc.*, No. CV 25-885-GW-MARX, 2025 WL 1421383, at *5, fn 4 (C.D. Cal. Apr. 8, 2025) ("Even without allegations suggesting greater consistency in Defendant's practices, courts have held that "at times" allegations can be sufficient to suggest one violation on each wage statement when multiple types of different violations are alleged").[1]

Because the Motion did not propose what would be an alternative, more reasonable rate, that argument has been waived and cannot be raised on reply, and so, the Court must deny the Motion. See, *id*. at fn 4 ("Here, where the Plaintiff did not propose a more reasonable rate, *Perez* would demand that the Court find Defendant's assumption reasonable, even if it were no more reasonable that an assumption that a violation occurred once every two weeks or once a month."); *see also*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.")

---

[1] Notably, in *Kraebel v. Siemens Industry, Inc.*, Judge Wu noted that *Perez* implicitly overruled cases granting remand based on the mere possibility that specific wording or limiting language in a complaint, such as "time to time" "could just as easily mean every two weeks or every month, suggesting that Defendant's assumption is not necessarily reasonable" because "*Perez v. Rose Hills Co.* demands a different conclusion." *Kraebel v. Siemens Indus., Inc.*, No. CV 25-885-GW-MARX, 2025 WL 1421383, at *5, fn 4 (C.D. Cal. Apr. 8, 2025).

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### 2. Reyes's Analysis of the Minimum and Overtime Wage Claims was Reasonable

Reyes's Notice of Removal estimated that the amount in controversy for unpaid regular time, exclusively for minimum wage liquidated damages, was $538,693, while for overtime it estimated $1,567,705. Reyes estimated that putative class members worked a total of 33,900 workweeks during the period, an estimate that the Motion does not dispute. Based on the Complaint's allegation of a "systematic, company-wide" pattern and practice of not paying Plaintiff and the Class for all hours worked (Complaint, ¶¶ 15, 44), Reyes assumed a violation rate of one violation per workweek. Reyes supported this assumption with extrinsic evidence showing that, the average hours worked for non-exempt employees on a daily basis exceeded 8 hours on 99% of days, exceeded 8.5 on 96% of days, and exceeded 9 on 38% of days. Reyes multiplied the estimated violation rate by the number of workweeks, and multiplied that by the applicable minimum wage for purposes of liquidated damages, and by the average hourly wage times 1.5 for the overtime claims. *See*, Notice of Removal, ¶¶ 40 – 52; *see also*, Declaration of Kate Shook in Support of Notice of Removal, ¶¶ 10, 11, 14.

Plaintiff disputes two aspects of this analysis. First, as discussed above, he disputes the violation rate. Second, he disputes the propriety of including liquidated damages at all, despite the fact that Plaintiff himself requested liquidated damages. Complaint, ¶ 37.

As to violation rate, the overwhelming majority of courts have found that language similar to the Complaint's allegations support violation rates similar to those used by Reyes. Plaintiff uses global "pattern and practice" allegations, which "implies conduct that is routine and recurring, rather than isolated or infrequent." *Sutton*, 2026 WL 1497437 at *3; *Richard v. St. Jude Med., Cardiology Div., Inc.*, No. 2:25-CV-11795-WLH-SK, 2026 WL 523705, at *4 (C.D. Cal. Feb. 25, 2026) (Finding assumption of one hour per week for overtime "eminently reasonable" based on "imprecise" pattern and practice allegations); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV1906963CJCRAOX, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (finding "a

8

violation rate of one hour of off-the-clock work and two hours of uncompensated overtime per workweek" to be a "limited and reasonable assumption" for class action complaint containing similar "sweeping allegations".); *see also*, Complaint, ¶ 4.[2]

Indeed, Plaintiff contends that these are "systematic, company-wide" practices, which suggests an even higher frequency rate. Complaint, ¶ 4. Plaintiff alleges that he was "typically scheduled to work at least 5 days in a workweek, and typically in excess of 8 hours in a single workday" which was described as an experience "typical and illustrative" of the Class. *Id*. at ¶ 14. And he alleges that "[a]t all relevant times herein mentioned, Defendants knowingly failed to pay Plaintiff and the Class compensation for all hours they worked", that "at all times relevant hereto, Plaintiff and the Class have worked more than eight hours in a workday", and that "at all relevant times hereto, Defendants failed to pay Plaintiff and the Class overtime compensation… Plaintiff and the Class are regularly required to work overtime hours." *Id*. at ¶¶ 32, 44. The Complaint suggests that *any time* a putative Class Member worked overtime, Defendants "failed to pay" them. *Id*. at ¶ 44; *Richard*, 2026 WL 523705 at *5 ("this Court is bound by the language of the complaint upon removal and the logical inferences that flow from it.")

---

[2] The Motion cites *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764–65 (9th Cir. 2013) for the proposition that "allegations of a 'pattern and practice' do not automatically justify assuming violations occurred in every pay period or workweek." Motion, 11:26-12:3. Reyes does not solely rely on the Complaint's pattern and practice allegations; it relies on other allegations, as well as the Complaint read as a whole, and Reyes' extrinsic evidence that is not disputed. In addition, *Garibay*, as an unpublished case, is of questionable precedential value. In addition to being contrary to, and predating, *Perez*, other courts have noted that "its reasoning has been called into question in light of" *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010). *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017). In particular, *Ritenour* called into question *Garibay*'s demand that a defendant "submit evidence of their liability" as inconsistent with *Lewis*. *See also*, *Patel v. Nike Retail Servs., Inc.*, 58 F.Supp.3d 1032 n.4 (N.D. Cal. 2014) ("[T]his Court acknowledges that it cannot fully reconcile the *Lewis* approach with the approach apparently taken by the Ninth Circuit in *Garibay*.... Faced with this potential conflict, this Court accepts the Ninth Circuit's published opinion as the superior authority.")

9

---

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Moreover, Reyes supplied evidence showing that putative class members would have had frequent opportunities for overtime work, which would support a higher unpaid overtime assumption, if Plaintiff's allegations are to be believed. Indeed, nearly the same evidence was found to support the same violation rate in a recent case. *Seijas v. Jackson Lab'y*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257, at *5 (E.D. Cal. Jan. 27, 2026) (finding one hour of uncompensated overtime per workweek "reasonable" where "Defendants have supplied evidence in support of their assumed violation rate and properly derive this assumption from the language of the operative complaint. According to the Munhall Declaration, the average shift length during the relevant period spanned 8.06 hours" in conjunction with "pattern and practice" allegations.)

Reyes's data shows that on *each day*, the average hours for putative class members exceeded 8.5 hours 96% of the time, and 9 hours 38% of the time. Reyes could have reasonably construed this less conservatively by estimating more than one hour per week; that would have been supported by the Complaint's assertion that Reyes failed to pay overtime.

Consequently, Plaintiff's reliance on *Waltz v. Wal-Mart Assocs., Inc.*, No. EDCV2101538TJHRAOX, 2022 WL 489697, at *2 (C.D. Cal. Feb. 17, 2022) is also misplaced; in *Waltz*, the removing defendant, unlike Reyes here, did not introduce any extrinsic evidence to support its assumed violation rate. Plaintiff also fails to explain how *Waltz* supports his position when Plaintiff himself alleges facts supporting Reyes's assumptions—that he and the Class are "regularly required to work overtime hours" and that at all relevant times, Reyes "failed to pay Plaintiff and the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law" as required by the Labor Code.  Complaint, ¶ 44.

Moreover, Reyes's analysis is conservative because it does not take into account several categories of damages that the Complaint contends exist. First, it does not account for the Complaint's allegations that Reyes did not calculate the regular rate of pay correctly. *See* Complaint, ¶ 15 (alleging that "Defendants failed to incorporate… non-

10

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

discretionary bonuses and other remuneration… when calculating the correct overtime rate of pay.") *See*, *Seijas*, 2026 WL 203257 at \*5, fn. 6 ("Further, Defendants excluded entirely from their calculation any potential damages stemming from Plaintiff's allegation that Defendants "failed to use the shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages" where applicable. (FAC ¶ 38; Opp'n at 13 n.9). Consideration of potential liability flowing from this claim would have produced an even higher calculation of overtime damages. Second, it does not account for the added overtime that would flow from the Complaint's allegations of interrupted meal periods; if these work interruptions involved off the clock work as alleged, and most workers were working more than 8 hours a day (which is what the data shows), these increments of allegedly unpaid work would have further added to the estimated amount in controversy. Complaint, ¶ 14.

Finally, as to Plaintiff's argument regarding liquidated damages, despite the fact that Reyes avoided double counting minimum wages by only seeking liquidated damages, Plaintiff attempts to argue that this *also* means that liquidated damages should not be included in the amount in controversy. However, this misconstrues Reyes's analysis and California Labor Code section 1194.2.

"[A] plaintiff who brings a claim for failure to pay overtime may recover liquidated damages under California Labor Code § 1194.2 if the plaintiff also shows that the plaintiff was paid less than the minimum wage." *Sillah v. Command Int'l Sec. Servs.*, 154 F. Supp. 3d 891, 914 (N.D. Cal. 2015). "[T]he Ninth Circuit has repeatedly held that 'the amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief a court may grant on that complaint* if the plaintiff is victorious.' " *Hill v. Hogan Pers., LLC*, No. EDCV 25-0564 JGB (SHKX), 2025 WL 1898255, at \*6 (C.D. Cal. July 9, 2025) (finding that it was reasonable to include liquidated damages in CAFA analysis because the plaintiff's complaint sought them via

11

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

prayer for relief) (emphasis in original; citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018)).

Likewise, Plaintiff included a request for liquidated damages in his Complaint. Complaint, ¶ 37. The Notice of Removal correctly avoided double counting as to liability because, by using time and a half to calculate the estimated amount in controversy for overtime, it already included relief for the minimum wage claim. Nothing about this theory would prohibit Plaintiff from contending that Plaintiff and/or putative Class members are also entitled to liquidated damages under California Labor Code section 1194.2, as was explained above. While Reyes may very well contest this entitlement, that argument does not mean that the liquidated damages should not be included in the amount in controversy. *Hill*, 2025 WL 1898255 at *6.

Accordingly, Reyes' estimation of $538,693 and $1,567,705 for the amount in controversy for the minimum wage and overtime claims, respectively, was reasonable.

### 3. Reyes's Analysis of the Meal and Rest Break Claims was Reasonable

Reyes's Notice of Removal estimated that the amount in controversy for the Complaint's meal and rest break claims was $2,090,274 for each claim, totaling $4,180,548. Using the same, undisputed number of workweeks and average hourly rate as discussed above, Reyes assumed a violation rate of two workdays per week wherein meal and rest periods were denied without payment of a sufficient premium. Notice of Removal, ¶¶ 53 – 69.

Plaintiff disputes the assumed violation rate, invoking the Complaint's use of the phrase "sometimes, but not always" to argue that the Court should reject the violation rate and, apparently assume a 0% violation rate (which, as explained above, is an outcome foreclosed by *Perez*).

Yet, Reyes showed that on the vast majority of days, putative class members worked eight or more hours a day. This supports that there were numerous workdays

12

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

where meal and rest breaks were required.[3] In conjunction with the Complaint's sweeping violation language, this supports the two-per-week violation rate. Plaintiff's argument that the Complaint asserts a modest frequency of violations is false. The Complaint asserts several grounds for violations: (1) that "Plaintiff and the Class were sometimes interrupted during meal breaks"; (2) that "Defendants failed to incorporate … non-discretionary bonuses and remuneration [into] … [the] meal break premium rate of pay"…; (3) that "Defendants have wrongfully failed to provide Plaintiff and the Class with legally compliant meal periods"; (4) that they "sometimes, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day" without providing a meal period; and (5) that Reyes "had a policy and practice not to provide meal periods." Complaint, ¶ 16. Nearly identical allegations are asserted as to rest periods. *Id*. at ¶ 17. The Complaint asserts that these violations occurred on a "regular" basis. *Id*. at ¶ 51. And, as to rest breaks, the Complaint makes the maximalist assertion that Reyes "failed to authorize Plaintiff and the Class to take rest breaks." *Id*. at ¶ 55. This could reasonably support a 100% violation rate.

Consistent with Reyes' Notice of Removal, numerous courts have found that such sweeping allegations, in conjunction with data showing opportunities for violations, supported similar violation rates. *Seijas*, 2026 WL 203257 at *6 ("Based on the high percentage of shifts eligible for a rest break and Plaintiff's allegations of both the numerous ways in which employees were deprived of complete rest breaks and a uniform policy denying employees premium pay when rest breaks were missed, the Court finds Defendants' assumption of two rest break violations per week reasonable[,]" and finding the same for meal breaks); *Lopez v. Gen. Dynamics Info. Tech., Inc.*, No. 24-CV-01743-BAS-DEB, 2025 WL 2308098, at *7 (S.D. Cal. Aug. 11, 2025) (District courts have held

---

[3] By contrast, the Motion relies on *Peters v. TA Operating LLC*, No. EDCV221831JGBSHKX, 2023 WL 1070350, at *9 (C.D. Cal. Jan. 26, 2023). Crucially, unlike here, the removing defendant in *Peters* did not provide **any** extrinsic evidence in support of their violation rate.

13

that violation rates ranging from 25% to 60% may be reasonably assumed as a matter of law based on "pattern and practice or policy and practice allegation[s].")

Of note, the Motion's reliance on the Complaint's use of the words "sometimes, but not always" does not change the removal assessment; in fact, viewing violation rate estimates for complaints that use the exact same phrase, courts have found violation rates similar to those used by Reyes to be reasonable. *See e.g.*, *Sauls v. Computershare Inc.*, No. 2:24-CV-03164-DAD-AC, 2025 WL 2788047, at *5 (E.D. Cal. Oct. 1, 2025) (observing that "courts have deemed a 60% violation rate to be a reasonable assumption when the plaintiff alleges that the defendant 'sometimes, but not always, violated meal break protections' " and concluding that for a similar meal break claim, that a 60% estimated violation rate was reasonable) (citing *Powell v. USI Ins. Servs., LLC*, No. 2:23-cv-04129-ODW-BFM, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023).); see also, *Avila v. Kiewit Corp.*, 789 F. App'x 32, 34 (9th Cir. 2019); *Barrett v. Saint-Gobain Glass Corp.*, No. 8:24-CV-01844-FWS-DFM, 2024 WL 4828715, at *6 (C.D. Cal. Nov. 18, 2024) (60% violation rate reasonable where complaint contained "sometimes, but not always" allegation.) More often than not, courts find that such limiting language does not render violation rates similar or even above those used by Reyes unreasonable. *See e.g.*, *Huston v. LEGO Brand Retail, Inc.*, No. 8:25-CV-02693-FWS-ADS, 2026 WL 395906, at *4 (C.D. Cal. Feb. 12, 2026) (use of "on occasion" was sufficient for 50 percent violation rate because "[t]he Complaint's language, which chiefly identifies only that violations of the law have occurred without indicating a reasonably specific frequency, is not so limiting as to make Defendant's assumptions unreasonable."); *Santos*, 2025 WL 2424357 at *5 (C.D. Cal. Aug. 20, 2025) (use of "is specifically not alleging that the violations occurred each workweek to each class member" "does not exclude nearly any possible assumption" … "because Defendant does not assume more than all of the putative class is affected, Defendant's assumptions do not run contrary to the language of the Complaint."); *Soto v. Graybar Elec. Co., Inc.*, No. 1:24-CV-00520-JLT-SKO, 2025 WL 3648360, at *5 (E.D. Cal. Dec. 16, 2025) (citing cases and finding that "at times" is

14

consistent with 20% violation rate); *Peraino v. DNC Parks & Resorts at Tenaya, Inc.*, No. 25-CV-1130-JES-DEB, 2025 WL 3022750, at *4 (S.D. Cal. Oct. 29, 2025) (same).

By contrast, the Motion offers no evidence, not even a declaration from the Plaintiff, to support its position. That is not sufficient to prevail on the "more likely than not" standard that applies here. Therefore, Reyes's estimate of $2,090,274 in controversy for each of the meal and rest period claims was reasonable.

### 4. Reyes's Analysis of the Waiting Time Penalties Claim was Reasonable

Reyes calculated that Plaintiff's waiting time penalties claim put an estimated $791,714 into controversy. Reyes presented undisputed data that 107 putative class members' employment was terminated during the relevant three-year statute of limitations period, and multiplied this number by the undisputed average hourly wage, and by 30 days. Notice of Removal, ¶¶ 63 – 69.

Plaintiff disputes: (1) the assumed 100% violation rate; and (2) the assumption of 30 days of penalties. Motion, 22:7-20.

As to the violation rate, again, because Reyes's other assumptions are reasonable and based on undisputed extrinsic data, the assumption of a 100% violation rate is reasonable. *Seijas*, 2026 WL 203257 at *7 ("Based on Defendants' assumptions regarding overtime and meal and rest break violations, which the Court has found to be reasonable, it is also reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties. … Defendants' assumption of a 100% violation rate is also supported by evidence as the Munhall declaration establishes that a high percentage of shifts that were break-eligible.") To put it another way, because Reyes reasonably infers that the Complaint asserts that all putative class members experienced some kind of a violation (otherwise, why would they be class members?[4]), all of them would be entitled to waiting time penalties for failure to pay accurate wages at termination. *Alarcon v. Target Corp.*, No. 5:25-CV-01276-SPG-SP, 2025 WL 2155371,

---

[4] Complaint, ¶ 26(b) ("Plaintiff's claims are typical of all Class Members' claims").

15

at *4 (C.D. Cal. July 28, 2025) ("Additionally, by asserting a class action, the Complaint thus supports a reasonable inference that every member of the Removal Putative Class Members would be owed the maximum penalty under California Labor Code § 203.")

Nevertheless, Plaintiff's baselessly argues that Reyes cannot assume a waiting time penalty of 30 days of daily wages because some employees may have separated employment less than 30 days prior to the date of the removal. Even if some of the 107 terminated employees had terminated within the 30 days prior to the date the removal was filed, well more than 30 days will have elapsed (and indeed have elapsed) before this claim is adjudicated. As Plaintiff alleges in his Complaint, Labor Code Section 203 provides for ongoing wages while the wages remain unpaid, up to 30 days. Complaint, ¶ 66.[5]

### 5.    Reyes's Analysis of the Wage Statement Claim was Reasonable

Reyes estimated that the amount in controversy generated by the Complaint's wage statement claim was $309,350, based on the undisputed number of pay periods during the relevant statute of limitations period, multiplied by a conservative $50 per pay period penalty.[6] Notice of Removal, ¶¶ 70 – 73. Reyes assumed a 100% violation rate, which is the only aspect of the calculation that Plaintiff disputes.

---

[5] Plaintiff relies on *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585–KJM–EFB, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) in his analysis of this claim. However, that case states that "[i]f the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." That premise is contrary to *Dart's* principle that no anti-removability presumption applies to CAFA removals.  Other courts have questioned the validity of *Contreras*. *See e.g.*, *Ochoa v. Fred Loya Ins. Agency, Inc.*, No. 1:24-CV-0151 JLT BAM, 2024 WL 2014781, at *6 (E.D. Cal. May 7, 2024) (questioning continued vitality of *Contreras's* holding requiring "summary-judgment-type evidence" after *Salter* held that a declaration was "competent proof" of the amount in controversy.)
[6] Reyes's use of $50 per pay period was itself a conservative assumption; many other analyses use $50 for the initial violation, and then $100 per subsequent violation to a maximum of $4,000 per putative class member, which would result in a higher amount in controversy in many instances. *See e.g.*, *Seijas*, 2026 WL 203257 at *4, fn. 5; *Cavada*, 2019 WL 5677846 at *8 (same).

16

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Like waiting time penalties, the overwhelming majority of cases find that a 100% violation rate is reasonable for wage statement claims, and Plaintiff offers no alternative rate. *Seijas*, 2026 WL 203257 at *8 ("Here, as Defendants' assumed violation rates for overtime, meal periods, and rest periods are reasonable and supported by evidence, the Court finds reasonable the assumption that 100% of wage statements contained inaccuracies."); *Cunningham v. Sharecare CL, LLC*, No. 2:23-CV-02564-DJC-CSK, 2024 WL 3738688, at *4 (E.D. Cal. Aug. 9, 2024) (same); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) (same).

These cases approve of the assumption of a 100% violation rate based on the fact that the wage statement claims were derivative; here, the Complaint also alleges that the wage statements were flawed for a separate reason, because they "do not show Defendant's address as required by California law." Complaint, ¶ 20. If that is true, and without any limitation as to which wage statements would be incorrect, every single wage statement would be deficient, and therefore, a 100% violation rate would be justified. The primary case Plaintiff relies on, *Barajas v. CPC Logistics Sols., LLC*, No. 22-CV-03911-WHO, 2022 WL 4397723, at *4 (N.D. Cal. Sept. 23, 2022), is inapposite—in that case, the court expressly based its finding on the removing defendant's failure to raise non-derivative allegations regarding the wage statement. By contrast, Reyes did raise this as a basis for its analysis. Notice of Removal, ¶ 70.

Therefore, Reyes's estimation of $309,350 in controversy for the wage statement claim was reasonable.

### 6.  Reyes's Analysis of Attorney's Fees was Reasonable

Reyes estimated the amount in controversy for Plaintiff's attorney's fees by multiplying the sum of the figures provided above, $7,388,011, by 25 percent, to estimate $1,847,002. See Notice of Removal, ¶¶ 74 – 79.

The Motion does not dispute the propriety of including attorney's fees in this figure. Nor does it argue that any of the claims that were used in the calculation were

17

subject to potential attorney's fees claims.[7] Instead, it again attempts to dispute Reyes's analysis by claiming that the Ninth Circuit does not automatically grant 25 percent in attorney's fees.

However, this argument fails for two reasons. First, 25 percent is considered a reasonable benchmark for assessing attorney's fees. *See e.g.*, *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach").

Second, a removing party may reasonably base attorney's fees estimates on court orders or judgments that awarded fees to the law firm prosecuting the case against them. *Seijas*, 2026 WL 203257 at *9 ("Defendants' assumption that attorneys' fees would constitute 25% of the damages calculated above is reasonable. . . The benchmark for class action attorneys' fees in the Ninth Circuit is 25%, with 20–30% within the usual range. … Defendants also provided 2 judgments approving settlements that awarded 35% and 25% attorneys' fees to Plaintiff's counsel in similar class action cases, both of which also alleged meal and rest break violations."); *Lopez v. Gen. Dynamics Info. Tech., Inc.*, No. 24-CV-01743-BAS-DEB, 2025 WL 2308098, at *8 (S.D. Cal. Aug. 11, 2025) ("Here, General Dynamics meets its evidentiary burden for seeking an application of a

---

[7] Nor could it; each claim is a component of Plaintiff's unfair competition law claim, which itself has an attorney's fee provision. *Seijas*, 2026 WL 203257 at *8 (finding attorney's fee estimate valid based on UCL claim and Cal. Code Civ. Proc. § 1021.5.) Plaintiff's Complaint seeks attorney's fees for each cause of action separately and also as to each claim via its UCL claim. Complaint, ¶¶ 39, 60, 67, 75, 94 (seeking fees "pursuant to California Code of Civil Procedure § 102.5 and other applicable laws"), Prayer for Relief, ¶ 8, 13, 18, 23, 28, 33, 38, 43; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) ("Here, by her complaint, Arias seeks recovery of attorneys' fees, and there is no dispute that at least some of the California wage and hour laws that form the basis of the complaint entitle a prevailing plaintiff to an award of attorneys' fees. See id. (citing Cal. Labor Code §§ 218.5, 226, 1194).")

18

25% benchmark by identifying a comparable case, Pacific Dutch Group, in which Lopez's counsel previously obtained a 35% fee award.")

Here, Plaintiff's law firm, Moon Law Group, PC, regularly seeks and obtains 33% of settlement funds that it obtains. *Lopez v. Util. Tree Serv., LLC*, No. 3:22-CV-01404-JES-DDL, 2024 WL 239103, at *2 (S.D. Cal. Jan. 22, 2024) ("The Court preliminarily approves Class Counsel's ability to request attorneys' fees of up to one-third of the Gross Settlement Amount ($288,333.33), and costs/expenses not exceeding $25,000.00."); *Ramirez v. Merrill Gardens, LLC*, No. 1:22-CV-00542-SAB, 2024 WL 3011142, at *23 (E.D. Cal. June 11, 2024) ("The motion for attorney fees here seeks 33 1/3%, or $275,000. . .The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage.")

Accordingly, Reyes's estimate of 25 percent is conservative given Moon Law Group, PC's historical practice of taking 33 percent, and could reasonably be higher.

## III.   CONCLUSION

The Court should deny the Motion for three reasons. First, the Motion is a facial challenge which fails to show that Reyes's estimate of the amount in controversy was not plausible. Second, the Motion is squarely inconsistent with recent, binding Ninth Circuit decision in *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). Third, under the preponderance of the evidence standard, Reyes showed that it is more likely than not that the amount in controversy exceeds $5 million considering the undisputed average hours worked data, and the Complaint's non-specific allegations. Because all of the analyses used in the Notice of Removal were based on the evidence submitted and reasonable assumptions, and Plaintiff does not challenge the evidence Reyes presented in its Notice of Removal, the Court has jurisdiction over this case under CAFA.

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

DATED: June 18, 2026                    SEYFARTH SHAW LLP


By: */s/ Ryan McCoy*
Kerry Friedrichs
Ryan McCoy
Petersen Walrod

Attorneys for Defendant
REYES FLEET MANAGEMENT, L.L.C.

20

326662045v.1

## LOCAL RULE 11-3 CERTIFICATION

I, Petersen D. Walrod, certify that this document complies with the word-count limitation set forth in C.D. Cal. Local Rule 11-6.

According to the word-processing system used to prepare this document, the foregoing Motion to Dismiss contains 6,769 words, excluding the caption, tables, signature block, and any material not counted under the Local Rules.

DATED: June 18, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Petersen D. Walrod*
Kerry Friedrichs
Ryan McCoy
Petersen Walrod

Attorneys for Defendant
REYES FLEET MANAGEMENT, L.L.C.

325256821v.2

21

DEFENDANT REYES FLEET MANAGEMENT, L.L.C.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND