Kane Moon (SBN 249834)
    E-mail: kmoon@moonlawgroup.com
Allen Feghali (SBN 301080)
    E-mail: afeghali@moonlawgroup.com
Enzo Nabiev (SBN 332118)
    E-mail: enabiev@moonlawgroup.com
Jason Kwak (SBN 360940)
    E-mail: jkwak@moonlawgroup.com
**MOON LAW GROUP, PC**
725 S. Figueroa Street, 31st Floor
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff Ricardo L. Gamez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO L. GAMEZ, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>REYES FLEET MANAGEMENT, L.L.C.; and DOES 1 through 10, inclusive,<br><br>      Defendant | Case No. 2:26-CV-03926 CV (RAOx)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Date: July 14, 2026<br>Time: 1:30 p.m.<br>Dept.: 10b<br><br>Action Filed:     March 4, 2026<br>Action Removed:  April 13, 2026 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   DISCUSSION .......................................................................................2

   A.   Defendant's Data Does Not Justify Its Assumed Violation Rates.............2

   1.   Defendant's Calculation of Overtime Wages is Unreasonable.............4

   2.   Defendant's Calculation for Meal and Rest Period Premiums is Unreasonable ........................................................................................6

   3.   Defendant's Calculation for Wage Statement Penalties is Unreasonable ........................................................................................7

   4.   Defendant's Calculation of Waiting Time Penalties is Unreasonable..8

   B.   Defendant's Calculation of Attorneys' Fees is Based On Unreasonable Calculations....................................................................10

III.   CONCLUSION....................................................................................11

## **TABLE OF AUTHORITIES**

CASES

*Arias v. Residence Inn by Marriott,* 936 F.3d 920 (9th Cir. 2019) ................. 1, 3

*Barrett v. Armadillo Holdings, LLC*, No. 1:22-CV-00882-DJC-DB, 2024 WL 1133419, at *6 (E.D. Cal. Mar. 15, 2024).......................................................... 6

*Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585–KJM–EFB, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017)............................................................ 7

*Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 994-96 (9th Cir. 2022) ....................................................................................................................... 4

*Perez v. Rose Hills Co.* 131 F. 4th 804 (9th Cir. 2025) ..................................... 1, 2

*Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 963 (9th Cir. 2020) ................... 1

*Seijas v. Jackson Laboratory*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257 ....................................................................................................................... 1, 5

## I.     **INTRODUCTION**

Defendant Reyes Fleet Management, L.L.C., (hereinafter "Defendant") invokes *Perez v. Rose Hills Co.* 131 F. 4th 804 (9th Cir. 2025) for the proposition that a defendant may rely on assumptions—even unsupported by extrinsic evidence—to meet CAFA's amount-in-controversy requirement. But *Perez* reiterates that any such assumption must remain reasonable and tethered to the complaint's allegations; it does not sanction untethered speculation. As Defendant states in its Opposition to Plaintiff's Motion to Remand, this Court may accept the plausible allegations of the notice of removal. *Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 963 (9th Cir. 2020) (citing *Arias v. Residence Inn by Marriott,* 936 F.3d 920 (9th Cir. 2019). Here, Defendant relies upon data demonstrating that employees' shifts were long enough to qualify for overtime, meal breaks, and rest breaks to justify a massive inferential leap to the conclusion that all of these Labor Code violations had occurred within one workweek for each employee. Furthermore, Defendant accepts its own assumptions regarding overtime, meal breaks, and rest breaks as truth and apply 100% violation rates for wage statements and waiting time penalties rather than providing a separate evidentiary basis for those violation rates.

Defendant also relies heavily on the unpublished decision in *Seijas v. Jackson Laboratory*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257. According to Defendant, the violation rates assumed in this case are justified because the underlying payroll and timekeeping metrics mirror those relied upon by the *Seijas* court. However, the inquiry as to whether Defendant's violation rates are reasonable must be case specific and cannot simply incorporate the reasoning that justified the violation rates in *Seijas* and expect the same violations rates to be reasonable in this case.

For these reasons and the reasons set forth below, this Court should grant this Plaintiff's Motion to Remand and remand this case back to the Los Angeles Superior Court.

## II.      DISCUSSION

### A.  Defendant's Data Does Not Justify Its Assumed Violation Rates

Defendant's reliance on *Perez v. Rose Hills* is misplaced. While *Perez* allows a removing defendant to use assumptions to estimate the amount in controversy, it does not grant free rein to speculate. The Ninth Circuit made clear that a removing defendant may rely on assumptions in its calculation, but only if those assumptions are part of a plausible chain of reasoning and reasonably tethered to the allegations in the complaint. *Id*. at 809. In other words, the assumptions must have a factual or logical basis in the pleading. The court emphasized that defendants are not required to prove actual violations but must articulate why their assumptions are reasonable in light of the complaint's language. *Id*. at 809–10.

Here, Defendant's articulation to justify its assumed violation rates requires the Court to accept a significant leap in reasoning. The assumed violation rates are supported only by Defendant's factual data concerning the average number of hours worked across all California hourly employees, not individual employee records. For example, a search of the State of California Department of Industrial Relations' Alternative Workweek Schedule's database shows an entry for Defendant of an election approving a four-day, ten hour per day workweek schedule. Attached hereto as **Exhibit A** is Defendant's entry in the State of California Department of Industrial Relations' Alternative Workweek Schedule Database. As a result, the inclusion of alternative workweek schedule qualified employees' shifts would result in an increase in the average number of hours worked per day, but without consideration that some employees would not be entitled to overtime until after their tenth hour of work, this data could be used to

Case No.: 2:26-CV-03926 CV (RAOx)          Page 2          *Gamez v. Reyes Fleet Management, L.L.C., et al.*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND

justify an unreasonable violation rate for unpaid overtime wages.

Defendant's data reflects general scheduling patterns across the putative class, those scheduling patterns do not establish that all putative class members were actually entitled to overtime compensation, meal periods, or rest breaks. It is an even further inferential stretch to extrapolate from Defendant's scheduling data that every putative class member experienced the corresponding Labor Code violations in every workweek during the class period.

Furthermore, Defendant attempts to justify its assumed violation rate by misquoting the Complaint. The language of the Complaint alleges the existence of violations, not their frequency, uniformity, or duration. At most, the allegation supports that violations occurred sometimes among class members, but it does not allege that such violations occurred on a weekly basis for every employee. It does not allege specific instances or a set violation rate, such as one hour per week. Defendant also misquotes Plaintiff's use of the phrases "throughout the statutory period" and "at all times relevant hereto" to justify a weekly violation rate as opposed to their intended purpose of establishing that violations occurred within the statutory period.

Here, Defendant's jurisdictional showing is insufficient. The alleged amount in controversy is based on unreasonable assumptions based on loosely calculated extrinsic evidence and misinterpretations of the language of the Complaint. While a cursory review of the evidence provided by Defendant may seem to support its allegations, a deeper understanding of what the data shows and the logical leaps necessary to justify the violation rates demonstrate that the allegations are not plausible as discussed by the Court in *Arias*. Accordingly, this Court should remand this case to state court.

//

//

### 1. Defendant's Calculation of Overtime Wages is Unreasonable

Defendant references *Perez* and *Seijas* as support of assuming one hour of unpaid overtime per week as the violation rate and assume that it is reasonable. Opposition to Plaintiff's Motion to Remand ("Opp.") at 10. However, Defendant cannot assume that the reasoning and accepted violation rates of one case can directly be incorporated into another case. Each defendant must allege violation rates based on the language of the complaint at hand and any extrinsic evidence. The district court's task is simply to determine if the defendant's "reasoning and underlying assumptions are reasonable." *Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 994-96 (9th Cir. 2022). Here, *Perez* requires defendant's assumptions be reasonable. *Perez* at 808.

Defendant principally relies on *Seijas v. Jackson Laboratory*, No. 2:24-CV-03423-DJC-AC, 2026 WL 203257, to justify its overtime assumptions. In *Seijas*, the complaint alleged putative class members were "regularly" required to perform "work duties off-the-clock" and Defendant maintained a "pattern" of not paying overtime. *Id.* at *5. The court therefore concluded that the defendant's assumptions were supported by both the allegations and the evidence presented. By contrast, Plaintiff's Complaint here does not allege that putative class members regularly worked off-the-clock or allege that Defendant maintained a "pattern" of requiring off-the-clock work.

As stated above, the data provided by Defendant shows the average number of hours worked by putative class members in a given workweek, but does not accurately represent Defendant's liability for unpaid overtime wages. Defendant's data regarding the average number of hours worked by putative class members accounts for any putative class members that may have been under alternative workweek schedules, but does not acknowledge that certain employees may have not been eligible for overtime wages until after their tenth hour of work.

Defendant's calculations also fail to account for leaves of absence and instead assume that every putative class member worked continuously throughout the class period without interruption. Rather, Defendant has assumed, based on the fact that the data 'shows' that employees almost always worked more than eight hours per day, that overtime wages were underpaid every week consistently throughout the putative class period. The evidence and the allegations of the complaint fall short of justifying such an allegation.

As stated above, the complaint simply alleges that "Defendants failed to pay Plaintiff for all hours worked" (Complaint at ¶ 14) and describes a general "policy and practice" (Complaint at ¶ 15). First, the complaint alleges the existence of overtime violations, not their frequency, uniformity, or duration. The use of "for example" signals that Plaintiff is identifying a type of unlawful practice rather than alleging a fixed, recurring violation applicable equally to all class members. At most, the allegation supports that off-the-clock work and unpaid overtime occurred sometimes among class members, but it does not allege that such violations occurred on a weekly basis for every employee. It does not allege specific instances or a set violation rate, such as one hour per week. Defendant also misquote Plaintiff's use of the phrases "throughout the statutory period" and "at all times relevant hereto" to justify a weekly violation rate as opposed to their intended purpose of establishing that violations occurred within the statutory period. However, Defendant has combined this misreading of the complaint along with its extrinsic evidence to support the unreasonable alleged violation rate it has adopted.

Here, Defendant has stretched its interpretation of the language of the complaint with its inaccurate reading of data demonstrating how many hours on average were worked by putative class members to justify an assumption that an unpaid overtime wages violation occurred on a weekly basis for the entirety of the putative class for 33,900 weeks. Therefore, Defendant's violation rate for unpaid

overtime wages is unreasonable because it relies on inaccurate inferences based on employee time data and misquoting the Complaint.

### 2. Defendant's Calculation for Meal and Rest Period Premiums is Unreasonable

Defendant continues to infer that data which demonstrates how many hours employees worked within one day, along with the language used in Plaintiff's complaint, sets a violation rate when it comes to unpaid meal and rest period premiums. Again, Defendant's data concerning the average number of hours worked daily by a putative class member demonstrates that the average putative class member qualified for meal and rest breaks but does not establish that violations occurred. Instead, Defendant relies on stretching the language of the Complaint to interpret it as supporting a vast violation rate in order to mirror decisions reached in cases such as *Seijas*. Unlike in *Seijas*, the Complaint does not allege "numerous ways in which employees were deprived of complete rest breaks" or a "uniform policy denying premium pay when rest breaks were missed." *Seijas* at *6. Instead, the Complaint states that the putative class members were "sometimes interrupted during meal breaks" and "sometimes, but not always" provided with meal periods. The language used in these Complaints is not comparable and should not be used to reasonably justify the same violation rate.

Therefore, Defendant's violation rates for unpaid meal and rest break violations are unreasonable because they are based on extrinsic evidence demonstrating that shifts were long enough to qualify for meal and rest periods and a misreading of the Complaint in order to fit the language featured in other cases in which remand was denied.

//

//

//

Case No.: 2:26-CV-03926 CV (RAOx)          Page 6          *Gamez v. Reyes Fleet Management, L.L.C., et al.*

### 3. Defendant's Calculation for Wage Statement Penalties is Unreasonable

Defendant's opposition relies on a mischaracterization of Plaintiffs' allegations and an improper assumption of a 100% violation rate for wage statement penalties. Defendant asserts that Plaintiff's claims necessarily mean that every wage statement issued during the class period was inaccurate and subject to penalties. This is unfounded and speculative.

The allegation that "Defendant's failed to furnish Plaintiff and the Class with accurate, itemized wage statements…" does not equate to a blanket assertion that every wage statement issued to every class member was inaccurate. Courts have consistently rejected attempts to transform general "policy and practice" allegations into 100% violation rate assumptions. In *Barrett v. Armadillo Holdings, LLC*, the Eastern District held that the defendant's assumed hundred percent (100%) violation rate for wage statement penalties was unreasonable because the defendant provided no justification for why every wage statement would contain a violation. *Barrett v. Armadillo Holdings, LLC*, No. 1:22-CV-00882-DJC-DB, 2024 WL 1133419, at *6 (E.D. Cal. Mar. 15, 2024). Instead, the court found a twenty percent ("20%") violation rate justifiable. *Id*. Accordingly, the Court should disregard Defendant's 100% violation rate.

In *Contreras v. J.R. Simplot Company*, the Eastern District also held that the defendant's violation rate for wage statements and waiting time penalties was not supported by the allegations in the complaint and the declaration provided by the defendant. *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585–KJM–EFB, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017). There, the defendant, in support of removal, provided the court with a declaration that identified the average hourly pay rate, the number of employees in the class period, and the approximate number

of shifts worked. Yet, the court held that nothing in the declaration assisted the court in making a reasonable assumption as to the applicable violation rate. *Id*.

As Defendant has not provided any data in its supporting declarations to the notice of removal to distinguish its case from that of *Contreras*, none of that data and the assumptions for the derivative claims based on that data can assist in making a reasonable assumption as to the violation rate of the wage statements. Furthermore, Defendant relies on the Complaint's assertion that the Defendant's address was not provided on the wage statements, but has not provided evidence of that being the case to justify its 100% violation rate and simply relies on Plaintiff's claim. Therefore, the assumed violation rate for the wage statements is unreasonable.

### 4. Defendant's Calculation of Waiting Time Penalties is Unreasonable

Despite Defendant's efforts, the allegations and the extrinsic evidence fail to support that Plaintiff is entitled to the full 30-day maximum penalties under Labor Code § 203. The problem here is that Defendant's removal analysis includes all separated employees dating back to March 4, 2023, to the date of removal, and assumes each is automatically entitled to the full 30-day statutory penalty, regardless of when they were terminated. This necessarily includes employees whose employment ended within 30 days of the removal date—individuals who cannot legally accrue the full 30-day penalty. By its own accounting, Defendant includes employees separated "through the date of removal," meaning some employees were terminated as recently as one day before the case was removed. For those individuals, the maximum statutory penalty would be one day—or zero if wages were timely paid. Assuming 30 full days for every separated employee is therefore objectively unreasonable.

Moreover, Defendant compounds the problem by assuming that every

putative class member worked an eight-hour shift per day, without any supporting evidence or tethering that assumption to the allegations in the Complaint. The Complaint alleges only that employees were "typically scheduled" to work eight-hour days, which does not establish that each included employee worked eight-hour shifts during the relevant periods. Applying a uniform 8-hour rate to all 98 separated employees further inflates the amount-in-controversy estimate in an unsupported and speculative manner.

Defendant's inclusion of employees who could not legally accrue 30-day penalties, combined with unsupported assumptions about eight-hour workdays, renders their amount-in-controversy calculation unreliable and insufficient as a matter of law. Accordingly, its assumptions should be disregarded.

Critically, the courts had some evidentiary or factual basis to conclude that most employees were entitled to the maximum penalty. Here, by contrast, Defendant's include all separated employees dating back three years, without any individualized evidence regarding when wages were actually paid or whether the statutory maximum could have accrued. Defendant's assumption applies indiscriminately to employees who were legally ineligible to accrue the full 30-day penalty, including those terminated within 30 days of the filing date. This renders the assumption facially unreasonable.

Labor Code section 203 penalties are not derivative of every underlying wage claim. Rather, they require proof that an employer willfully failed to timely pay wages due upon separation. Accordingly, Defendant cannot simply assume that every former employee who allegedly experienced an overtime, meal period, or rest period violation necessarily suffered a waiting time penalty violation.

Here, Plaintiff alleges only that Defendant "willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period premium wages, and rest

period premium wages" and that Defendant "did not pay Plaintiff and the Class their final paychecks immediately upon termination." Likewise, the Sixth Cause of Action alleges that Defendant failed to timely pay all wages owed to former employees upon separation.

However, nothing in the Complaint alleges that every former employee was owed unpaid wages at separation, much less that Defendant willfully failed to pay every former employee all wages due. The Complaint contains no allegations regarding the frequency of such violations, the number of former employees allegedly affected, or that waiting time penalties accrued as to every separated employee.

## B. Defendants' Calculation of Attorneys' Fees is Based On Unreasonable Calculations

Defendant's calculations for attorneys fees are linked to their previous calculations which, as argued above, are unreasonable as none of their calculations are grounded in allegations made in Plaintiff's complaint nor in extrinsic evidence supporting the figures used in Defendant's calculations. Therefore, the Court should hold calculations for attorneys fees based on unreasonable assumptions to be similarly unreasonable.

//
//
//
//
//
//
//
//
//

## III.   CONCLUSION

For all the foregoing reasons and for any other reason that this Court deems proper, Plaintiff requests that this Court grant Plaintiff's Motion to Remand and remand this case back to the Los Angeles Superior Court.

Respectfully submitted,

Dated:  July 6, 2026            **MOON LAW GROUP, PC**

By: _____
Kane Moon
Allen Feghali
Enzo Nabiev
Jason Kwak
Attorneys for Plaintiff

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Plaintiff certifies that this brief contains 2,818 words in compliance with the word limit of L.R. 11-6.1.

Dated:  July 6, 2026            **MOON LAW GROUP, PC**

By: _____
Kane Moon
Allen Feghali
Enzo Nabiev
Jason Kwak
Attorneys for Plaintiff

# EXHIBIT A

Case 2:26-cv-03926-CV-RAO   Document 25   Filed 07/06/26   Page 16 of 16   Page ID #:415

# Alternative Workweek Elections Database - Search results

- **New search**

This data was updated on **6/26/2026 3:14:42 PM**

Your search result: 1 record

| | |
|---|---|
| **Company:** | Reyes Fleet Management |
| **Address:** | 14180 Frederick St |
| **City:** | Moreno Valley |
| **State:** | CA |
| **Zip:** | |
| **County:** | |
| **Date of election:** | 10/18/2021 |
| **Date on letter:** | |
| **Date received:** | 11/17/2021 |
| **Vote:** | 2 in favor 0 against |
| **Work schedule:** | 4/10 Workweek |
| **Other description:** | mechanics |
| **Telephone:** | 909 665 3505 |

- **New search**

